The TAYLOR GROUP, INC., Plaintiff,

v.

Roger W. JOHNSON, Administrator of the General Services Administration; Thurman M. Davis, Regional Administrator for the General Services Administration; Thomas Russell, Contracting Officer; Carol M. Browner, Administrator of the Environmental Protection Agency; and Jean Mills, Contracting Officer, Defendants.

CA No. 94–D–1254–S.

United States District Court,
M.D. Alabama,
Southern Division.

Feb. 28, 1996.

James H. McLemore, Montgomery, AL and Karl Dix, Jr., Atlanta, GA, for plaintiff.

Kenneth E. Vines, Asst. U.S. Attorney, Montgomery, AL, for defendants.

### MEMORANDUM OPINION AND JUDGMENT

DE MENT, District Judge.

Before the court is The Taylor Group, Inc.'s ("plaintiff") application filed November 14, 1994, for attorneys' fees, expenses and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Under the EAJA, a "prevailing party in any civil action" may seek payment for fees, expenses and costs incurred by the attorneys in the litigation. 28 U.S.C. § 2412(a)(1) & (b). Such an award is mandatory unless the court "finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Id.* at § 2412(d)(1)(B).

In *Taylor v. Johnson,* 915 F.Supp. 295 (M.D.Ala.1995),[1] the court found that under the EAJA, the plaintiff was a "prevailing party" and that the United States had failed to sustain its burden of showing that its position was substantially justified. Based on the authority of *National Treasury Em-*

*ployees Union v. Internal Revenue Service,* 735 F.2d 1277 (11th Cir.1984), the court, however, reserved ruling on whether "special circumstances" warranted a denial of attorneys' fees, expenses and costs. In *National Treasury Employees Union,* the Eleventh Circuit held that where, as here, a settlement agreement is silent regarding fees and the record does not contain an adequate factual basis to conclude that the prevailing party waived attorneys' fees or that the United States assumed attorneys' fees were not wanted, the court should hold an evidentiary hearing unless the parties can stipulate to the relevant facts. *Id.* at 1279.

Hence, in *Taylor 1,* the court ordered the parties to enter into a joint stipulation of the facts regarding the intent and discussions, if any, of attorneys' fees during settlement negotiations. The parties have now done so and additionally provided several attorney affidavits and declarations. The court finds that the additional evidence provides a sufficient factual basis to rule on the plaintiff's EAJA application, thus, rendering a hearing unnecessary. For the reasons discussed herein, the court grants, in part, and denies, in part, the plaintiff's application and awards $16,323.41 in attorneys' fees, expenses and costs for work performed in connection with this case.

### FACTS

Complete findings of fact are contained in *Taylor 1,* which the court herein incorporates by reference. The additional evidence submitted by the parties, which the court finds dispositive, is as follows:

(1) The parties have stipulated that "[a]t no time prior to or during the settlement discussions was the subject of attorneys' fees, costs, or expenses raised by either party." Stipulation at ¶ 8.

(2) Lydia R. Hakken, counsel for the General Services Administration ("GSA"), filed a Declaration and therein states that "it was the understanding of GSA that the Settlement Agreement constituted the entire

---

**1.** Hereafter, the court will refer to the November 27, 1995, memorandum opinion and order as *Taylor 1.*

agreement between the parties and that it did not exclude attorneys' fees." Hakken's Declaration at ¶ 5.

(3) Kenneth R. Pakula, counsel for the Environmental Protection Agency ("EPA"), filed a Declaration and therein states that "[t]he subject of attorneys' fees, costs, and expenses was not discussed prior to, or during, settlement discussions. At no point in time did counsel for [the plaintiff] indicate that they would seek to be reimbursed for attorneys' fees, costs or expenses." Pakula's Declaration at ¶ 4.

(4) The parties have stipulated that the plaintiff's "first request for reimbursement of its attorneys' fees ... was made in its application for Fees and Other Expenses Under the Equal Access to Justice Act. Prior to this application, [the plaintiff] had not requested reimbursement of its attorneys' fees." Stipulation at ¶ 9.

(5) The parties also have stipulated that "counsel for [the plaintiff] drafted the Settlement Agreement, provided draft copies to counsel for GSA and EPA for comment, and coordinated the Settlement Agreement between the parties." *Id.* at ¶ 6.

(6) In an affidavit, counsel for the plaintiff (Karl Dix) explains his reasons for excluding a request for attorneys' fees, expenses and costs in the complaint and for failing to discuss the same during settlement negotiations. He states that he thought such a request in the complaint "would be premature," since such a request "could only be ruled upon by the Court after final adjudication of the matter." Dix's Aff. at ¶ 2. He further explains as follows:

> I remember that we were rushed to finalize the settlement since the scheduled preliminary injunction hearing was driving the resolution of this matter. Accordingly, I never mentioned the recovery of attorneys' fees during the settlement of this matter since [the plaintiff] did not request reimbursement of attorneys' fees in its Complaint and I viewed an Equal Access to Justice Act fee application as a proceeding separate and apart from the underlying litigation which would be heard and resolved after the litigation had been concluded as required by statute. Raising

and negotiating the fee application issue, I feared, would expand the scope of the negotiations and, potentially, fatally undermine the resolution of this matter since resolution would be delayed beyond the hearing date.

*Id.* at ¶ 4.

(7) The settlement agreement executed between the parties includes the following clause: "This Settlement Agreement contains the entire agreement and understanding between [the plaintiff] and Defendant[s] relating to the subject matter contained herein, and it may not be altered, amended, or modified in any respect or particular whatsoever except by writing duly...."

## DISCUSSION

### I. Special Circumstances

■ In determining the plaintiff's right to attorneys' fees, expenses and costs under the EAJA, the only issue remaining is whether the United States has met its burden of showing that "special circumstances" make an award under the EAJA inappropriate in this case. 28 U.S.C. § 2412(d)(1)(B). The court finds that the United States has failed to sustain its burden.

■ The "special circumstances" exception under the EAJA functions as " 'safety valve' " and serves at least two purposes. *National Treasury Employees Union,* 735 F.2d at 1278 (citing 1980 U.S.Code Cong. & Ad.News at 4990). First, the exception " 'help[s] insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts.' " *Id.* (brackets supplied). Second, " '[i]t ... gives the court discretion to deny awards where equitable considerations dictate an award should not be made.' " *Id.*

■ Here, the United States asserts that the following "special circumstances" render an award under the EAJA inequitable: (1) the plaintiff's failure to discuss attorneys' fees, expenses and costs during settlement negotiations; (2) the omission of attorneys'

fees, expenses and costs in the settlement agreement coupled with the so-called "merger clause" contained therein; and (3) the plaintiff's failure to make a demand in the complaint for attorneys' fees, expenses and costs. To avoid liability under the EAJA, the United States bears the burden of showing the existence of "special circumstances." *Kunz Constr. Co. v. United States,* 16 Cl.Ct. 431, 434 (1989), *aff'd,* 899 F.2d 1227 (1990). A review of the applicable case law indicates that courts seldom invoke the "special circumstances" exception. *See Knights of Ku Klux Klan v. East Baton Rouge Parish School Bd.,* 643 F.2d 1034, 1041 (5th Cir.), *rev'd on other grounds,* 454 U.S. 1075, 102 S.Ct. 626, 70 L.Ed.2d 609 (1981) (decided under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, as amended, which has been interpreted to contain a "special circumstances" exception as under the EAJA).

Here, it is undisputed that neither party raised the issue of attorneys' fees, expenses and costs throughout the settlement negotiations. Furthermore, the attorneys for the respective parties have submitted evidence setting forth their "intents" regarding the right of the plaintiff to seek attorneys' fees, expenses and costs in a separate action. Not surprisingly, the intents of opposing counsel lie on opposite ends of the spectrum. That is, counsel for the plaintiff (Karl Dix) represents that he never intended to waive such a right, while counsel representing the interests of the United States states that they assumed that the absence of any discussion thereof foreclosed a subsequent demand in an EAJA application. Based upon the circumstances presented in this case, the court finds that the reasons underlying the opposing parties' assumptions are plausible and believable. That is, the court does not question the truth or veracity of the respective attorneys' allegations.

In *National Treasury Employees Union,* the Eleventh Circuit suggested, without holding, that a denial of fees may be warranted where the prevailing party "remained silent on attorney's fees during settlement discussions for fear their injection would upset the settlement." 735 F.2d at 1279. The Eleventh Circuit continued by stating, however, that a waiver should not be found if counsel for the prevailing party "merely overlooked" the statutory right to fees or if the United States deliberately did not mention costs in order to "take advantage of this oversight." *Id.*

Here, the court finds that neither party is blameless. It is clear from the affidavit submitted by counsel for the plaintiff (Karl Dix) that he knew of his right to seek attorneys' fees, expenses and costs but failed to mention the "fee application issue" for "fear[ ]" that he "would expand the scope of the negotiations and, potentially, fatally undermine the resolution of this matter...." Dix's Aff. at ¶ 4. This admission would appear to tip the scales in favor of denying attorneys' fees, expenses and costs to the plaintiff.

On the other hand, the declarations submitted by the attorneys representing the interests of the United States reveal that they had full knowledge of the provisions of the EAJA, and the right of the "prevailing party" to seek attorneys' fees, expenses and costs, but chose to remain silent on the issue. Hence, the United States' knowledge of but failure to mention the same, coupled with the argument that the plaintiff's silence constitutes a waiver, closely resembles the situation set forth in *National Treasury Employees Union.*

To state it a different way, the United States' argument that the plaintiff's silence constitutes a waiver is a two-edged sword. The United States' same silence during settlement negotiations equally could be interpreted as acquiescence in the plaintiff's statutory right to subsequently seek attorneys' fees, expenses and costs under the EAJA if it were to prevail. *See Ashley v. Atlantic Richfield Co.,* 794 F.2d 128, 139 n. 18 (3d Cir.1986). Hence, when carefully weighing the factors presented here, the court finds that the scales are evenly balanced, the fault lying equally with both parties. The court finds that under these circumstances, the plaintiff is entitled to an award of attorneys' fee, expenses and costs, because the EAJA and interpreting case law place the burden of proof on the losing party.

Other than *National Treasury Employees Union, supra,* the court has not found, nor have the parties pointed to, any controlling precedent regarding the failure to discuss attorneys' fees, expenses and costs during settlement negotiations. Other circuits faced with analogous circumstances under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, as amended, have found that the prevailing party does not waive attorneys' fees where the parties fail to address this issue in the settlement agreement. For example, in *El Club Del Barrio, Inc. v. United Community Corp.,* 735 F.2d 98 (3d Cir.1984), the Court of Appeals for the Third Circuit held as follows:

> The issue . . . is whether the failure of the parties to a civil rights suit to have provided for attorneys fees in a written settlement agreement creates a "special circumstance" depriving a prevailing plaintiff in the underlying action of its right to reasonable attorneys fees under 42 U.S.C. § 1988 (1976). We hold that it does not, even where the parties discussed but were unable to agree on attorneys fees during settlement negotiations. Rather, the burden is on the losing party to show that the settlement agreement clearly waived the statutory right to attorneys fees.

*Id.* at 99. There, the plaintiff, as the prevailing party, included in a draft of the settlement agreement an express reservation of the right to seek attorneys' fees in a separate petition. *Id.* at 100. In the final agreement, however, the plaintiff withdrew this provision. Nevertheless and despite the defendants' reasonable reliance on the plaintiff's withdrawal, the court held that silence in the settlement agreement is insufficient, in and of itself, to sustain a losing party's burden of proof. Rather, the losing party, who bears the burden of proof, must show an affirmative waiver of fees by the prevailing party. *Id.* at 101.

Similarly, in *Ashley,* the Third Circuit held that under 42 U.S.C. § 1988 and

> in the absence of an express waiver, [a prevailing party] will be deemed to have retained [his or] her statutory right to an award of reasonable attorney's fees. Therefore, where a defendant seeks to set-

tle its total liability on a claim, it shall be incumbent upon the defendant to secure an express waiver of attorney's fees. Silence will not suffice.

794 F.2d at 138–139 (footnotes omitted) (brackets supplied). As indicated, the Third Circuit places the ultimate responsibility on the losing party to bring up and incorporate in the settlement agreement the parties' understanding regarding attorneys' fees. The court agrees with the reasoning behind strictly construing a settlement agreement against the losing party on a fee waiver issue, because the EAJA (as well as 42 U.S.C. § 1988) provides for a reasonable fee except in the most unusual circumstances. In sum, the court finds that because the EAJA places the burden of proof on the United States in this case and because all other factors are equal, the United States cannot defeat the plaintiff's EAJA application under the "special circumstances" exception simply by asserting that the plaintiff was silent on the issue of attorneys' fees where it also failed to raise the issue during settlement negotiations.

The court further finds that contrary to the United States' argument, the so-called "merger clause" contained in the settlement agreement does not preclude the issuance of attorneys' fees, expenses and costs. In interpreting the settlement agreement, the court turns to Alabama law as provided in the terms of the agreement. Under Alabama law, the court must look to the express terms in the agreement which clearly provide the limits of the settlement agreement. *Kinmon v. J.P. King Auction Co.,* 290 Ala. 323, 276 So.2d 569, 570 (1973) (" '[I]t is elementary that it is the terms of the written contract, not the mental operations of one of the parties, that control its interpretation.' ") (citation omitted); *see also Shepherd Realty Co. v. Winn–Dixie Montgomery, Inc.,* 418 So.2d 871, 874 (Ala.1982) (" '[I]n the absence of ambiguity, the court cannot interpret the contract but must take it as it is written.' ") (citation omitted).

Here, the court finds that by its express terms, the settlement agreement only refers to the terms specifically enumerated in said document. In fact, the language is crystal

clear: "This Settlement Agreement contains the entire agreement and understanding between [the plaintiff] and Defendant[s] **relating to the subject matter contained herein.**" (Emphasis supplied.) As indicated, *supra*, attorneys' fees were not then in issue. Additionally, the court finds that nowhere within the four corners of the document is there a waiver of any right to file for reimbursement of attorneys' fees under the EAJA. The court finds it ironic that the United States relies upon a clause to add new terms to the agreement to defeat the plaintiff's fee claim when that very clause is designed to preclude such additions.

■ The court likewise finds that, contrary to the United States' contention, the plaintiff's failure to request attorneys' fees, expenses and costs in the complaint does not prevent it from an award thereof. An EAJA fee application is separate and distinct from the original action, and the thirty-day EAJA filing period does not even begin to run until the entry of a "final judgment" in the underlying case. *See* 28 U.S.C. § 2412(d)(2)(G). Nowhere in the provisions of the EAJA is there a requirement that a party request attorneys' fees, expenses and costs in the pleadings of the original action. The court points out that the United States has not provided any case law or statutory authority in support of its argument.

Finally, the court emphasizes that its findings are consistent with the purposes of the EAJA. As explained in *Kunz Constr. Co., Inc.*:

> Congress had a clear purpose when it passed the EAJA. Of paramount motivation was Congress' concern that certain individuals and small businesses "may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." H.R.REP. No. 1418, 96th Cong., 2d Sess. 5, reprinted in 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984, 4984. Especially troubling to Congress was its recognition that "when the cost of contesting a Government [action] exceeds the amount at stake, [many individuals and small businesses have] no realistic choice and no

effective remedy. In these cases, it is more practical to endure an injustice than to contest it." H.R.REP. No. 1418 at 9, 1980 U.S.CODE CONG. & AD-MIN.NEWS at 4988. Accordingly, Congress crafted EAJA to "reduce the detriments and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees, and other expenses against the United States." H.R.REP. No. 1418 at 6, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4984.

16 Cl.Ct. at 431.

## II. Award of Attorneys' Fees, Expenses and Costs under the EAJA

The plaintiff seeks attorneys' fees, expenses and costs under the EAJA for legal services associated with the preparation of the complaint and the motion for temporary restraining order or, in the alternative, for preliminary injunction. Additionally, the plaintiff seeks payment for hours expended by its attorneys in settlement negotiations that resulted in the dismissal of this action on October 13, 1994, and for time spent preparing the EAJA application for fees, expenses and costs.

### A. Attorneys' Fees

■ In finding that the plaintiff has satisfied all conditions for recovering attorneys' fees under the EAJA, the court must now determine the amount of attorneys' fees to award. "The starting point for determining the amount of reasonable fees is the number of hours reasonably expended during the litigation multiplied by a reasonable hourly rate." *Bruland v. Howerton*, 742 F.Supp. 629, 635 (S.D.Fla.1990) (citing *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988) (second citation omitted)).

### 1. Authorized Hourly Rate under the EAJA and Upward Adjustment of Hourly Rate

The EAJA provides that

the amount of fees awarded ... shall be based upon prevailing market rates for the kind and quality of services furnished ... except that ... attorney fees shall not be

awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). Of the four attorneys who worked on the plaintiff's case, three are based in Atlanta, Georgia, and one in Montgomery, Alabama. Based upon practical experience and knowledge of the legal fees charged today, the court finds that one cannot logically argue that the prevailing market rate for legal fees in either Atlanta or Montgomery is less than $75 per hour, and the United States, for good reason, has not made such an argument.

■ As provided under the EAJA, the court, in its discretion, may increase the maximum hourly fee if it determines that a cost-of-living increase or a "special factor" warrants a deviation from the $75 cap. *Id.* at § 2412(d)(2)(A)(ii); *see also Pollgreen v. Morris,* 911 F.2d 527, 538 (11th Cir.1990) (citing with approval a South Carolina case in which the statutory rate was adjusted to an hourly rate of $134.36); *see also Jean v. Nelson,* 863 F.2d 759 (11th Cir.1988), *aff'd. sub nom. Commissioner, Immigration & Naturalization Service v. Jean,* 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990).

■ Here, the plaintiff does not seek an increase under the "special factor" exception but, rather, asserts that a cost-of-living increase is warranted. The court agrees. Congress imposed the $75 cap on the original effective date of the EAJA, which was October 1, 1981. Clearly, this rate should be adjusted to reflect the rise in the cost of living on the date the plaintiff filed its EAJA application, which was in November 1994. In determining the rate of adjustment, the court will use the Consumer Price Index

("CPI") compiled by the United States Bureau of Labor Statistics.[2] *See Bruland,* 742 F.Supp. at 636 n. 8 (citing *United States v. Willens,* 731 F.Supp. 1579, 1581 (S.D.Fla. 1990)); *Jean,* 863 F.2d at 773 (holding that "a court should describe mathematically the basis of all cost of living adjustments under the [EAJA]"). Virtually every court has calculated cost-of-living increases by comparing the CPI in October 1981 with the CPI of the year at issue. *Jones v. Espy,* 10 F.3d 690, 693 (9th Cir.1993) (citation omitted); *Johnson v. Sullivan,* 919 F.2d 503, 504 (8th Cir. 1990); *Sierra Club v. Secretary of Army,* 820 F.2d 513, 521–23 (1st Cir.1987).

In 1981, the CPI was 82. On the date the plaintiff filed its EAJA application, the CPI was 149.4. *See* Pl.'s Br. in Supp. of EAJA Appl., filed Nov. 14, 1994, Ex. 4 (CPI index). The following formula indicates that the current maximum rate under the EAJA, adjusted solely for cost of living and no other factor, is $136.65:

$$\frac{82.0}{149.4} = \frac{\$75}{X} \qquad X = \$136.65$$

The plaintiff does not request the full cost-of-living increase for the four attorneys who worked on his case. Additionally, the United States has neither argued that a cost-of-living increase is not justified nor has it asserted that the hourly rates proposed by the plaintiff are unreasonable. After carefully reviewing the affidavits submitted in support of the plaintiff's EAJA application, the court finds that the rates requested are reasonable based upon the experiences of each of the attorneys and, thus, will award fees at the following rates:

| Attorney | Hourly Rate |
|---|---|
| Karl Dix | $130.00 |
| Lee Roberts | $130.00 |
| George Papaioanou | $110.00 |
| James H. McLemore | $130.00 [3] |

---

**2.** In *Bruland,* the court "utilized a single cost-of-living factor to account for inflation occurring between 1980 and *the time of the ultimate disposition of the attorneys' fees issue." Id.* at 636 (citing cases) (emphasis supplied). Here, the plaintiff has calculated the cost-of-living increase based upon the CPI in effect when the plaintiff filed his EAJA application. The court finds that this method is appropriate, particularly since it will yield a lower cost-of-living increase than the

CPI in effect today. Hence, the United States is in no way prejudiced and is in fact benefitted.

**3.** In his affidavit attached to the brief in support of the EAJA application for attorneys' fees, filed November 14, 1994, James McLemore sought $136.65 per hour, the maximum allowable under the EAJA. However, in his subsequent affidavit filed on November 30, 1994, James McLemore lowered his fee to $130 per hour.

### 2. Hours Expended

■ In support of the EAJA application for attorneys' fees filed on November 14, 1994, as supplemented on November 30, 1994, the plaintiff submitted itemized ·statements of the services rendered by its attorneys, as well as attorney affidavits in support thereof. In the original application filed November 14, 1994, the plaintiff requests attorneys' fees for legal services rendered by Karl Dix, Lee Roberts and George Papaioanou from September 26, 1994, through October 25, 1994. The hours for which the plaintiff seeks compensation from these three attorneys are as follows: (1) Karl Dix (54.20 hours); (2) Lee Roberts (1.5 hours); and (3) George Papaioanou (31.20 hours). Additionally, the plaintiff seeks attorneys' fees for 18.7 hours of work by James McLemore from September 19, 1994, through October 18, 1994.

Then, on November 30, 1994, the plaintiff supplemented its EAJA application. The attorney hours set forth therein are for the preparation of the EAJA fee application. The plaintiff requests attorneys' fees for work conducted by Karl Dix and George Papaioanou from October, 26, 1994, to November 22, 1994. Specifically, the plaintiff seeks an additional 2.4 hours for work performed by Karl Dix in reviewing various correspondence from the defendants and in working with George Papaioanou on the EAJA application. An additional 34.7 hours also is sought for George Papaioanou's hours spent preparing the EAJA application. Finally, the plaintiff requests 5.7 additional hours for James McLemore's work on the EAJA application. Hence, the total hours for which the plaintiff seeks payment of attorneys' fees, as shown in the EAJA application, as supplemented, are as follows: (1) Karl Dix (54.2 + 2.4 = 56.6 hours); (2) Lee Roberts (1.5 hours); (3) George Papaioanou (31.2 + 34.7 = 65.9 hours); and (4) James McLemore (18.7 + 5.7 = 24.4 hours).

While hours for preparation of an EAJA application are compensable, *Jean*, 496 U.S. at 157, 110 S.Ct. at 2318, the court finds that awarding fees for 42.8 hours (34.7 + 2.4 + 5.7) is excessive. Nearly one-third of the total attorney hours was spent preparing the EAJA application, as supplemented. In so finding, the court realizes, of course, that on November 16, 1994, it ordered the plaintiff to file case authority, which would allow the court to award attorneys' fees for time spent in preparing the EAJA application, thus, requiring additional work for the plaintiff's attorneys. Nonetheless, the court has reviewed the case law and can find no authority for awarding attorneys' fees for such a high number of hours. *See Fraction v. Bowen*, 859 F.2d 574, 575 (8th Cir.1988) (awarding attorneys' fees for 4.25 hours for preparation of the EAJA application for attorneys' fees); *Rutledge v. Sullivan*, 745 F.Supp. 715, 716 n. 1 (S.D.Ga.1990) (finding "that 3.5 hours is a reasonable amount of time to draft, revise and amend a fees application and accompanying memorandum of support").

After reviewing the affidavits and attorney statements, as well as the case law, the court is willing to award the plaintiff one-half of the hours requested for the preparation of the EAJA application. That is, the court will reduce by fifty percent the hours submitted by Karl Dix, George Papaioanou and James McLemore to reflect the following figures: (1) Karl Dix ($2.4 \times .5 = 1.2$); (2) George Papaioanou ($34.7 \times .5 = 17.35$); (3) James McLemore ($5.7 \times .5 = 2.85$).

■ However, after careful review of the attorney statements, the court finds that all other hours requested are reasonable and compensable under the EAJA. The United States argues that the fee application should be denied because it "fails to specifically indicate how many hours were spent, on a daily basis, in performing the legal tasks related to the subject litigation. Counsel has merely provided a list of dates, tasks and total hours without indicating the number of hours expended on each daily activity." Def.s' Opp. to Pl.'s EAJA Appl., filed Dec. 12, 1994, at 12 n. 6. The EAJA provides that records of an attorney's time must be submitted with an EAJA fee application. 28 U.S.C. § 2412(d)(1)(B). The United States cites *Naporano Iron and Metal Co. v. United States*, 825 F.2d 403 (Fed.Cir.1987), wherein the court stated that "[i]n the absence of such an itemized statement, the court is unable to determine whether the hours, fees and expenses, are reasonable for

an individual item." *Id.* at 404 (citation omitted). The court finds that case distinguishable from the instant one.

In *Naporano Iron and Metal Co.*, the EAJA application for attorneys' fees included one affidavit submitted by the attorney in charge of the plaintiff's case. Therein, the court emphasized that the attorney had merely provided a conclusory assertion that

the total fees sought were $117,490 and attendant disbursements of $6,545. He stated, "[b]ecause 70 percent, more or less, of the time expended in this matter was expended by senior members of the firm, an average hourly rate of $115.00 is a close approximation of actual hourly rates...." (emphasis added).... Attached thereto were periodic billings to Naporano Iron and Metal Company generally indicating the total billing for the month and allocable 'Disbursements' for the billed period. An example is the bill from petitioners' attorney dated December 16, 1982, to wit: For Legal Services Rendered through November 30, 1982.

*Id.* The court affirmed the trial court's denial of fees under the EAJA and held that "such a showing is inadequate to support an award of attorneys' fees." *Id.* (citations omitted). The court further stated that "[o]nly by knowing the specific task performed can the reasonableness of the number of hours required for any individual item be judged." *Id.*

Here, the court finds that the attorney statements are sufficiently detailed to be acceptable under the EAJA. The statements list in detail each individual attorney's time by date and specific task and then provide the total hours spent in those activities combined, and also identify meetings and telephone conversations. For example, in the supplemental application for fees, Karl Dix outlines his work as follows:

| 11/08/94 | Received and reviewed letter from EPA; worked on response. |
| 11/09/94 | Reviewed correspondence from Mr. McEntagart to Mr. Taylor; reviewed letter previously telecopied to Mr. Taylor; worked with George Papaioanou on application. |
| 11/10/94 | Reviewed various telecopies and various telephone conversations with Mr. Taylor. |

TOTAL HOURS: 2.40 at $130 per hour = $312.

The court does not find fatal the fact that each specific line item does not state the exact number hours performed for that activity. This example and the remaining itemizations presented by the four attorneys are sufficiently particularized and reasonable in amount. Importantly, the United States does not argue that any of the activities engaged in by the attorneys are not compensable under the EAJA or that the hours claimed are excessive.

Additionally, the court finds the remarks in *Kunz Constr. Co.* equally pertinent in this case:

With respect to the alleged inadequacy of [plaintiff's] fee application, the Supreme Court's unequivocal directive that "a request for attorney's fees should not result in a second major litigation" is particularly apt. [Plaintiff's] application is clearly adequate to determine not only its entitlement to fees but the parameters of its recovery. Requiring [plaintiff] to re-file now, after the application has matured, for a new round of responsive pleading based merely on a quantum question would certainly transgress the Court's proscription just quoted.

16 Cl.Ct. at 440 (brackets supplied) (internal citations omitted).

### 3. Total Attorneys' Fees Award

Based on the foregoing, the court finds that $15,539.00 is the appropriate attorneys' fee award in this case:

| Attorney | Rate Per Hour | Hours | Fee |
|---|---|---|---|
| Karl Dix | $130.00 | 55.4 | $7202.00 |
| Lee Roberts | $130.00 | 1.5 | $ 195.00 |
| George Papaioanou | $110.00 | 48.55 | $5340.50 |
| James H. McLemore | $130.00 | 21.55 | $2801.50 |
| | | **TOTAL** | **= $15,539.00** |

### B. Expenses and Costs

The plaintiff also seeks payments for expenses and costs, and the United States has not contested the reasonableness of these amounts. In addition to attorneys' fees, the EAJA authorizes the award of "expenses" and "costs." 28 U.S.C. § 2412(a)(1) & (d)(1)(A). For example, compensable expenses include "telephone, reasonable travel, postage, and computerized research expenses." *Jean*, 863 F.2d at 778.[4]

The attorney statements attached to the EAJA application, as supplemented, set forth the various expenses and costs incurred during the course of this litigation. The court will discuss each and whether said amount is recoverable:

■ 1. *Computer Research*—The plaintiff seeks a total of $129.89 for computer research ($93.55 in the original EAJA application, and $36.34 in the supplemental application). The court finds that the total claimed for computer research is reasonable and recoverable. "Computer research fees are typically billed to paying clients and should therefore be recoverable in a fee petition." *Butler v. Shalala*, No. 92–C–145, 1995 WL 314595, at *5 (N.D.Ill. May 22, 1995); *Elcyzyn v. Brown*, 7 Vet.App. 170, 183 (1994) (awarding computer research costs incurred "in preparation for the proceedings ... [since] such costs are customarily charged to the client where these proceedings took place").

■ 2. *Long Distance Calls:* The plaintiff requests expenses for long distance telephone calls totaling $80.49. *See* Attorney statements of Karl Dix, George Papaioanou and Jimmy McLemore setting forth bills of $29.25, $38.01 and $12.53. The court finds that $80.49 is reasonable and compensable under the EAJA. *See Jean*, 863 F.2d at 778.

■ 3. *Photocopying and Facsimile:* The plaintiff's facsimile costs total $364.50 ($96.00 + $20.50 + 248.00), and photocopying fees amount to $403.75 ($63.25 + 73.25 + $267.25). As already stated, both facsimile and photocopying expenses are recoverable under the EAJA, *see Jean, supra.* Based upon the complexity of the case and the pertinent documents which were necessary to litigate and settle this action, however, the court finds this amount excessive and will reduce it by one-half. Hence, the plaintiff may recover $384.14 for these expenses.

■ 4. *Postage, UPS Delivery & Federal Express:* The court will allow the plaintiff to recover expenses for postage ($8.09) and UPS delivery ($21.00) as listed in the attorney statements submitted in support of the EAJA application. *See* Pl.'s Appl. for Fees, Expenses & Costs under the EAJA, filed Nov. 14, 1994. Likewise, the plaintiff may recover $40.80 for postage, express mail and certified mail expenses as claimed by Jimmy McLemore. *See John C. Grimberg Co.*, ASBCA 32490, 88–3 BCA ¶ 20,860 (1988).

■ 5. *Filing Fee:* Plaintiff also may recover as costs the clerk filing fee of $120.00. 28 U.S.C. § 2412(a) states that "a judgment for costs, as enumerated in section 1920 of this title ... may be awarded to the prevailing party in any civil action by or against the United States ..." According to § 1920, "[a] judge or clerk of any court of the United States may tax as costs" ... [f]ees of the clerk...." 28 U.S.C. § 1920(1).

■ 6. *Miscellaneous and Attorney Travel:* The court rejects the claim for $20.00 in miscellaneous charges, because the plaintiff has not stated for what service or services these charges were incurred. Likewise, the court will not award the plaintiff for any monies incurred for attorney travel. While the plaintiff, in its brief, states that all charges for attorney travel are recoverable,

---

4. The following cases exhibit the types of expenses that courts have awarded under the EAJA. *Vaughn v. Heckler*, 860 F.2d 295, 296 (8th Cir.1988) (postage and photocopying expenses); *Aston v. Secretary of Health & Human Services*, 808 F.2d 9, 12 (2d Cir.1986) (telephone, postage, photocopying and travel expenses); *Securities &* *Exchange Commission v. Kaufman*, 835 F.Supp. 157, 159–60 (S.D.N.Y.1993) (travel, typing services, postage, telephone, transportation, storage of records and translation expenses); *Holden v. Bowen*, 668 F.Supp. 1042, 1053 (N.D.Ohio 1986) (telephone, messenger service, postage, computer-assisted research and travel expenses).

the plaintiff has not submitted an amount for such expenses.

 7. *Secretarial Overtime:* The court rejects the plaintiff's request for overtime monies paid to the attorneys' secretaries and agrees with the reasoning set forth in *Louis v. Nelson,* 646 F.Supp. 1300 (S.D.Fla.1986). In analyzing the prevailing party's application for fees and.expenses under the EAJA, the court stated as follows:

> The Court can find no way to justify awarding compensation for secretarial overtime as either costs or expenses. Secretarial work is part of the everyday activity of a law firm which constitutes its overhead. Secretarial salaries are paid to employees of the firm, and thus are not similar to those monies paid to persons outside the firm such as process servers or witnesses. Furthermore, their salaries cannot be equated with costs, such as filing fees, or expenses such as postage or computer charges, which are similarly paid to entities outside of the law firm. Attorneys cannot be compensated for normal overhead expenses. The Court finds no authority to support the inclusion of hours and subsequent charges related to secretarial overtime in the award.

*Id.* at 1321.

Based on the foregoing, the following chart outlines the expenses that the court will award the plaintiff under the EAJA:

| Expenses | Amount |
|---|---|
| Computer Research | $129.89 |
| Long Distance Calls | $ 80.49 |
| Photocopying and Facsimile | $384.14 |
| Postage, UPS Delivery & Federal Express | $ 69.89 |
| Filing Fee | $120.00 |
| Miscellaneous and Attorney Travel | $ 00.00 |
| Secretarial Overtime | $ 00.00 |
| **TOTAL** = | $784.41 |

## CONCLUSION

For the reasons stated herein and pursuant to the provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412, it is CONSIDERED, ORDERED and ADJUDGED that the plaintiff be and the same is hereby AWARDED the amount of $16,323.41 against the defendants, to be paid forthwith to plaintiffs' attorneys for fees, expenses and costs expended during the course of this litigation.